```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION

JERMAINE HENDRIX,              }
                               }
     Plaintiff,                }
                               }      CIVIL ACTION NO.
v.                             }      08-AR-1539-S
                               }
STERILITE CORPORATION,         }
                               }
     Defendant.                }
```

## MEMORANDUM OPINION

In the complaint filed by Jermaine Hendrix ("Hendrix" or "plaintiff") against his former employer, Sterilite Corporation ("Sterilite" or "defendant"), he alleged that he was the victim of a racially hostile environment, and of retaliation, and was constructively discharged. He invoked Title VII (42 U.S.C. § 2000e, *et seq.*) and 42 U.S.C. § 1981, both of which prohibit a racially hostile workplace environment. Hendrix is an African-American, and thus a member of a protected group. In addition to compensatory damages and punitive damages, Hendrix originally sought equitable relief, and, invoking the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), sought a declaration that Sterilite's conduct constituted a violation of federal anti-discrimination laws.

After lengthy discovery, Sterilite filed a motion for summary judgment. It was partially granted, eliminating Hendrix's claims for constructive discharge and for retaliation. The subsequent pretrial order delineated the following primary issues for trial:

(1) whether Sterilite created or tolerated a racially hostile environment aimed at plaintiff; and, (2) if so, whether, as a proximate consequence Hendrix suffered damages for emotional distress or mental anguish.  Because the court had granted summary judgment against Hendrix on his constructive discharge claim, the court expressly eliminated all claims by Hendrix for any form of economic damages, and orally advised Hendrix that he could not obtain equitable relief because he had voluntarily left his employment.  The pretrial order allowed plaintiff to proceed with his claims for punitive damages and for declaratory relief.

The case was tried to an eight-person jury, which was instructed by the court *ab initio* that Hendrix did not, and could not, seek compensation for lost wages or other out-of-pocket losses.  The court made clear that Hendrix's **only** damage claim was a claim for mental anguish.  This express instruction was given both at the beginning of the case and during the final jury instructions.  At the conclusion of the evidence, Sterilite orally moved for judgment as a matter of law pursuant to Rule 50, F.R.Civ.P.  The court reserved ruling upon the motion.

No exceptions were taken by either party to the jury charge insofar as relevant to this opinion.  The charge did not contain an instruction on nominal damages, a charge not requested by either party.  No objections were voiced by either party to the special interrogatories that were submitted to the jury, which, after

deliberation, the jury answered as follows:

## SPECIAL INTERROGATORIES TO THE JURY

The jury will answer the following questions AS APPROPRIATE.

    1.  Do you find from a preponderance of the evidence that plaintiff was subject to a hostile or abusive work environment because of his race?

        YES   ✓            NO\_\_\_\_\_

    2.  Only if you have answered "YES" to question No. 1, do you find from a preponderance of the evidence that such hostile or abusive work environment was created or permitted by a supervisor with immediate or successively higher authority over plaintiff?

        YES   ✓            NO \_\_\_\_\_

    3.  Only if you have answered "YES" to questions No. 1 and No. 2, do you find from a preponderance of the evidence that plaintiff suffered damages as a proximate or legal result of such hostile or abusive work environment?

        YES   ✓            NO \_\_\_\_\_

    [Note: If you answered "NO" to any one of the preceding three questions, you need not answer the remaining questions.]

    4.  Do you find from a preponderance of the evidence that defendant exercised reasonable care to prevent any racially harassing behavior in the workplace; and that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by defendant to avoid or correct the harm?

        YES \_\_\_\_\_            NO   ✓

    5.  Only if you have answered "NO" to question no. 4, do you find from a preponderance of the evidence that plaintiff should be awarded damages to compensate him for emotional pain and mental anguish?

        YES \_\_\_\_\_            NO   ✓

    If your answer is "YES", in what amount:
$ _____

    6.  Do you find from a preponderance of the evidence that a higher management official of defendant acted with malice or reckless indifference to the plaintiff's federally protected rights?

    YES _____          NO __✓__

    7.  Only if your answer is "YES" to question No. 6, do you find by a preponderance of the evidence that defendant itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such racial harassment in the workplace?

    YES _____          NO _____

    8.  Only if your answer is "YES" to questions No. 6 and No. 7, what amount of punitive damages, if any, should be assessed against defendant?  $ _____

    SO SAY WE ALL.

                       Foreperson  __[REDACTED]__

                       DATED:  _____7/14/10_____

After the verdict was read in open court by the courtroom deputy, neither party requested a poll of the jury.  Nor did either party request further instructions to the jury.  Counsel appeared somewhat stunned, and the court admits to having been bumfuzzled.  Age takes its toll.  Thereafter, the court discharged the jury and adjourned court.

On July 15, 2010, the day after the verdict, the court entered an order requiring the parties to file simultaneous briefs on July 23, 2010.  They were ordered to state their respective positions as

to the course of action to be taken by the court under the circumstances.

The most telling thing about the simultaneous briefs filed on July 23, 2010, is that neither party asks the court to declare a mistrial and to grant a new trial.  The court takes this as a waiver by both parties of the "new trial" option, and a suggestion by both parties that the court should itself fashion a satisfactory solution for the perceived problem.  Although Hendrix does, in fact, request a **partial** new trial, he would limit the trial to the question of damages, together with an instruction to the jury that liability has been established, and a charge on nominal damages.  The court rejects this suggestion out of hand.  If the court should, *ex mero motu*, order a new trial, something it could do, the new trial would be on **all** issues.  It would be impossible to bifurcate or divorce the question of the amount of mental anguish Hendrix suffered as a result of the hostile work environment from evidence that would describe that environment.  Sterilite, to the contrary, contends that the jury's answers to interrogatories constitute an adjudication in its favor, requiring a final judgment dismissing Hendrix's action. Perhaps, a reason why Sterilite does not ask for a new trial is the ominous answers the jury gave to interrogatories No. 1, No. 2, No. 3, and No. 4, as well as Sterilite's legitimate fear that a new trial would provide an opening for an award of punitive damages.  Neither of the parties,

nor the court, knows what the jury's answers to interrogatories No. 5, No. 6, No. 7, and No. 8 would have been if, during Hendrix's direct examination of the Sterilite boss, John Evans, or, during the cross-examination of the alleged harasser, David Hurley, Hendrix had asked the witness about Sterilite's manual on standards of conduct (Defendant's Exhibit 29), pointing to the following unambiguous and prominent language at page 3 of the exhibit:

> **Sterilite Policy Prohibiting Discrimination and Harassment**
>
> <u>Sterilite Corporation's Policy - **ZERO TOLERENCE**</u>
>
> Sterilite Corporation ("Sterilite") has a written policy which strictly forbids discrimination and harassment. Sterilite has a **ZERO TOLERANCE** policy. It applies to all employees.  You may be subject to discipline or termination for any violation of Sterilite's harassment policy. Sterilite's policy is *stricter than the law*. Sterilite's policy prohibits offensive conduct by employees even if the conduct does not meet the legal definition of sexual harassment.

(emphases in original).

The "**written policy**" referred to in this document, if there is one, is not in evidence.

Both Evans, who was the plant manager, and Hurley, who was Hendrix's immediate supervisor, knew, or should have known, that any Sterilite employee who used the "N"-word in the workplace was automatically subject to the draconian discipline of termination. Hurley was a productive worker, but one who, after Hendrix had complained about him, had been told more than once by Evans to get along with Hendrix.  Sterilite obviously did not want to lose a

good worker like Hurley.  It would have every reason to go light on him for debatable misconduct.

Hendrix was initially backed up by the written statement of fellow-employee, Mary Moore, who undoubtedly did not want to cost Hurley his job, and who, after writing her statement, was talked to by management, and retreated somewhat from her recollection that Hurley used the "N"-word to describe Hendrix (Plaintiff's Exhibit 10).  Hendrix testified that Hurley, who is white, asked him during a lunch break if he had cooked the barbeque he was eating, to which Hendrix answered, "yes", after which Hurley said, "that nigger can cook", after which Tom O'Neal, who is a white co-employee, started laughing.  It was this workplace remark that precipitated Hendrix's final, strident complaint to Sterilite management.  Hendrix had previously complained about being called "boy" and "you people", expressions that Hendrix understandably took to be racial slurs or euphemisms for the "N"-word, especially when used while Hendrix's performance was being criticized by Hurley.  Hurley admitted using the expression "you people", but said he meant to include everybody within earshot, not just African-Americans.

Had either Hurley or Evans been asked by Hendrix's counsel whether or not he knew, under Sterilite's published work rules, that Hurley could be, and probably would be, fired if he had been caught using the "N"-word, Hurley's and Evans's credibility would have been badly compromised, and Moore's subsequent equivocation on

what she had heard at lunch, might have been better understood or differently interpreted. And, the jury's responses to the interrogatories respecting punitive damages might have been different.

The court has no quarrel whatsoever with the jury's first four findings: (1) that plaintiff was subjected to a hostile work environment because of his race; (2) that such hostile work environment was created or permitted by a Sterilite supervisor with immediate or successively higher authority over plaintiff; (3) that plaintiff suffered damages as a proximate or legal result of such hostile work environment; and (4) either that Sterilite did not exercise reasonable care to prevent racially harassing behavior in the workplace, or that Hendrix reasonably took advantage of any such preventive or corrective opportunities that may have existed. Neither does the court quarrel with the jury's finding that Hendrix failed in his burden of proving the requisites for a punitive award, although another jury might disagree with this jury on that subject, or for that matter, on other subjects.

It is not the usual practice of this court to instruct on nominal damages, unless a party requests it. In view of the current outcome, the court will, in the future, alter its practice in this regard.

### **The Solution to the Problem**

According to Professor Moore:

> Whenever an apparent inconsistency in a jury verdict is found, the trial judge **must uphold the verdict if there is any way to justify it**. (citing *Palmer v. Montecillo*, 31 F.3d 1499, 1509 (10th Cir. 1994). Stated differently, **the grant of a new trial motion is generally warranted only when the court is convinced that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice**.

12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][f][i] (3d ed. 2007) (emphasis added).

In this case, there is no new trial motion to be considered, and if this verdict were used as a basis for entering final judgment in favor of Sterilite, it would constitute a gross "miscarriage of justice". This court draws the absolute inference that nominal damages must be awarded, because this jury unequivocally found, in the answer to interrogatory No. 3, that Hendrix **sustained damage as a proximate consequence of Sterilite's proscribed racial harassment.** It is patently obvious, especially without a charge respecting nominal damages, that this jury only intended to minimize or to deny any money recovery by Hendrix, while agreeing with Hendrix that Sterilite had engaged in prohibited conduct that caused him damage. It did not intend to contradict itself. When the jury answered "NO" to question No. 5, it was simply responding to the awesomely pregnant question, "**SHOULD** Hendrix be awarded damages?" (double emphasis added). This answer was no more than a statement of the jury's opinion that Hendrix was unworthy or undeserving of a monetary award despite

9

being the victim of discrimination.  In interrogatory No. 5, the court used, word-for-word, the jury interrogatory found in the Eleventh Circuit Pattern Civil Jury Instructions, at page 81, in particular, interrogatory No. 7, which asks juries in cases like this one:

> **Should** the Plaintiff be awarded damages to compensate for emotional pain and mental anguish?

(emphasis added).

The problem before this court is inherent in the first and most important word contained in this pattern interrogatory.  The word **"should"** can be understood, and in this case was understood, in accordance with one of the definitions of the word **"should"** found in every respectable dictionary, namely, that **"should" has a moral dimension that calls for an exercise of moral judgment or obligation**.  This is not what the authors of Pattern Jury Interrogatory No. 7 had in mind, nor what this court intended, but it is what begged for the response this jury gave.  The jury did not ask that a dictionary be sent to it, but without a dictionary, the jury dealt fairly, honestly and objectively with semantic and moral difficulty.  Its answer was no more than a literal response to interrogatory No. 5, and was not inconsistent with its earlier responses.  At least one of the eight jurors was a semanticist, and he, she or they convinced the rest that Hendrix **should**, as a matter of moral rectitude, **not** be awarded damages for mental anguish.

Professor Moore further instructs:

When the answers to [jury] interrogatories are inconsistent with each other and one or more is inconsistent with the jury's verdict, a new trial **may** be warranted. **First, the judge would attempt to read the answers to interrogatories consistently, if possible** [citing *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 672-675 (5th Cir. 2002)], **if the answers to interrogatories can be read in a way that shows a verdict by the jury that makes sense** and does not show an abuse of power or other **misconduct** by the jury, a new trial should not be required. [(citing *Gallick v. Baltimore and Ohio RR Co.*, 372 U.S. 108, 119, 83 S.Ct. 659 (1963); *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 82 S.Ct. 780 (1962)].

12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][f][ii][B] (3d ed. 2007) (emphasis added).

If, despite what this court finds to have been a legitimate jury response to interrogatory No. 5, the response is thought by others to be inconsistent with the jury's earlier findings, an award of nominal damages is the only way to **"make sense"** of this verdict. And, there is nothing whatsoever to suggest **"misconduct"** by this jury.

### *Walker v. Anderson Electrical*

Strangely, Sterilite makes no mention of *Walker v. Anderson Elec. Connectors*, 944 F.2d 841 (11th Cir. 1991). Instead, it is Hendrix who discusses *Anderson Electrical*, ostensibly for the purpose of fending off what Hendrix erroneously anticipated would be Sterilite's reliance upon *Anderson Electrical*, the seminal case in which the Eleventh Circuit affirmed this very court after this

11

Case 2:08-cv-01539-WMA   Document 56   Filed 08/06/10   Page 12 of 17

court had denied nominal damages on post-trial motion by a plaintiff who had been awarded no damages. The jury there had answered a special interrogatory finding that Anderson Electrical had committed "an act or acts of sexual harassment against plaintiff in violation of Title VII", but then awarded no damages. This court's opinion, from which the appeal to the Eleventh Circuit was taken, is found at 742 F.Supp. 591 (N.D. Ala. 1990). The Eleventh Circuit gave the following careful exposition of the applicable law, from which it has not retreated since 1991:

> Walker next argues that a jury finding of sexual harassment in violation of Title VII mandates a court award of one dollar in nominal damages and that the district court erred by not making such an award. We disagree.
>
> The district court did not instruct the jury on the possibility of awarding nominal damages in the event of a finding of sexual harassment. Walker did not request a charge on nominal damages, nor did she object to the court's failure to make such a charge.
>
> Fed.R.Civ.P. 51, which states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection," precludes Walker, at this late date, from objecting to the fact that no jury instruction on nominal damages was given at trial. The federal court's long standing policy against additur, as an intrusion on the jury's domain and violation of the Seventh Amendment, also stands in the way of Walker's request for one dollar in nominal damages where the jury awarded none. *See Hattaway v. McMillian*, 903 F.2d 1440, 1451 (11th Cir.1990); *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935).
>
> Walker argues that *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), requires the automatic award of nominal damages upon the finding of a Title VII

12

court had denied nominal damages on post-trial motion by a plaintiff who had been awarded no damages. The jury there had answered a special interrogatory finding that Anderson Electrical had committed "an act or acts of sexual harassment against plaintiff in violation of Title VII", but then awarded no damages. This court's opinion, from which the appeal to the Eleventh Circuit was taken, is found at 742 F.Supp. 591 (N.D. Ala. 1990). The Eleventh Circuit gave the following careful exposition of the applicable law, from which it has not retreated since 1991:

> Walker next argues that a jury finding of sexual harassment in violation of Title VII mandates a court award of one dollar in nominal damages and that the district court erred by not making such an award. We disagree.
>
> The district court did not instruct the jury on the possibility of awarding nominal damages in the event of a finding of sexual harassment. Walker did not request a charge on nominal damages, nor did she object to the court's failure to make such a charge.
>
> Fed.R.Civ.P. 51, which states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection," precludes Walker, at this late date, from objecting to the fact that no jury instruction on nominal damages was given at trial. The federal court's long standing policy against additur, as an intrusion on the jury's domain and violation of the Seventh Amendment, also stands in the way of Walker's request for one dollar in nominal damages where the jury awarded none. *See Hattaway v. McMillian*, 903 F.2d 1440, 1451 (11th Cir.1990); *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935).
>
> Walker argues that *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), requires the automatic award of nominal damages upon the finding of a Title VII

> violation regardless of Rule 51 and the federal courts' dislike of additur. *Carey* does not, however, address the issue of nominal damages in a Title VII action.
>
> *Carey* involved interpretation of 42 U.S.C. § 1983, which provides as remedy for violations of constitutional rights by persons acting under color of state law. Emphasizing the absolute nature of constitutional rights and "the importance to organized society that those rights be scrupulously observed," *Carey*, 435 U..S. at 266, 98 S.Ct. at 1053, the Court mandated the award of nominal damages upon the finding of a procedural due process violation even where no actual injury had been shown. By contrast, this case involves, not a violation of constitutional rights, but merely, a violation of purely statutory rights under Title VII. Nothing in *Carey* mandates the award of nominal damages for statutory violations.
>
> Because we find that the reasoning in *Carey* applies only to violations of constitutional magnitude, we decline Walker's invitation to extend the rationale of *Carey* to Title VII cases and affirm the district court's denial of Walker's post-trial motion for nominal damages.

944 F.2d 844-845 (11th Cir. 1991).

Although there are striking similarities between *Anderson Electrical* and the instant case, there are also crucial differences. It may be that this court recognizes these differences more easily than Hendrix does, because *Anderson Electrical* was tried in this court.

First, in *Anderson Electrical* the plaintiff had not invoked 42 U.S.C. § 1981, as Hendrix did. For this reason, the Eleventh Circuit in *Anderson Electrical* avoided the question of whether nominal damages could be awarded under § 1981 without an assessment of monetary damages by the jury. It did recognize the question as a potential future problem. The Eighth Circuit in *Hicks v. Brown*

13

*Group, Inc.*, 902 F.2d 630 (8th Cir. 1990), vacated 499 U.S. 914, 11 S.Ct. 1299 (1991) (cited in *Anderson Elec.*, 944 F.2d at 845 n.9), had held that nominal damages are mandatory upon a finding of race discrimination when charged under § 1981. The Eleventh Circuit pointed out that *Anderson Electrical* involved the alleged violation of a **purely statutory right** and not a **right of constitutional magnitude**. Hendrix is here not relying on Title VII alone, but on the guarantee of "equal protection" contained in the Constitution and enforced through § 1981. It is therefore of "constitutional magnitude". This court does not know what this court, or the Eleventh Circuit, would have done if a § 1981 claim had been included by the plaintiff in *Anderson Electrical*. The plaintiff there was complaining of **sex** discrimination and not **race** discrimination, and therefore **could not have invoked § 1981.** *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586 (1976).

The second crucial distinction is that in *Anderson Electrical* the plaintiff was not seeking damages for mental anguish. He sought only lost wages and benefits. This opened the opportunity for the *Anderson Electrical* jury to find, as it apparently did, that although sexual harassment existed, it did not **proximately cause** plaintiff to lose wages. For aught appearing, the plaintiff wholly failed in her obligation to mitigate her damages. This court cannot remember the evidence it heard so long ago.

The third crucial distinction between *Anderson Electrical* and

14

the instant case is that in *Anderson Electrical* plaintiff did not seek declaratory relief, as Hendrix clearly does.  The Eleventh Circuit recognized this distinction, expressly mentioning the absence in *Anderson Electrical* of a claim for declaratory relief.

The fourth fact that differentiates this case from *Anderson Electrical* is that in *Anderson Electrical*, the predominant and over-arching issue was whether the plaintiff was a prevailing party for the purpose of awarding her attorneys' fees.  This court is not quite at that point yet in this case.

The fifth distinction is that although the Eleventh Circuit recognizes a "longstanding policy against *additur*, as an intrusion on the jury's domain and violation of the Seventh Amendment, this prohibition against *additur* usually arises when a trial judge refuses to grant a **plaintiff's** motion for a new trial and plaintiff is unhappy with the amount of damages awarded", Professor Moore explains:

> A practice analogous to additur may properly be employed when damages are incorrectly low **as a matter of law**.

12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][g][ii][C] (3d ed. 2008)  (emphasis added).

Professor Moore also points out:

> . . . . **when a jury finds liability by the defendant, but does not make an award for pain and suffering, courts may but are not required to order a new trial** . . . .

12 James Wm. Moore et al., Moore's Federal Practice §

59.13[2][g][ii][A] (3d ed. 2008) (emphasis added).

**If** the fact that this jury did not award damages to Hendrix is thought to have been inconsistent with its prior findings (a belief not shared by this court), it was a mistake of **law**, to which the parties, the court, and the authors of the Pattern Jury Instructions, may have inadvertently contributed.  If "*additur*" is what the nominal damage this court will award must be called, then a one dollar ($1.00) *additur* is called for in this case.

The final and prevailing difference between *Anderson Electrical* and the instant case is that in *Anderson Electrical*, the jury answered then question No. 2 by expressly finding that the plaintiff had **failed to prove proximate cause**, 944 F.2d at 843, whereas the Hendrix jury expressly found that Hendrix **did prove proximate cause**.  Proximate cause is, of course, an essential element of a statutory tort, and Hendrix offered substantial evidence for it and proved it to the satisfaction of this jury.

### **Plaintiff's Separate Request for Declaratory Relief**

Although Hendrix, in his brief of July 23, 2010, argues that he has never given up his claim for equitable relief, a claim that plaintiff included in his statement of position in the final pretrial order, the court had carefully explained to Hendrix that reinstatement, or an injunction against future violations, would not be granted because plaintiff is no longer employed by defendant.  *See Henson v. City of Dundee*, 682 F.2d 897, 913 (11th

Cir. 1982), and *Cooper v. Ambassador Personnel, Inc.*, 579 F.Supp.2d 1355, 1363 (M.D. Ala. 2008). Even if the court had not already eliminated the equitable options, the court could not, in this case, order reinstatement of an employee who had quit his job, and the court would not mandatorily enjoin future similar violations. To do so would invite constant court monitoring of the injunction, and would invite a series of contempt citations, without the exhaustion of EEOC remedies. In any event, the equity issue was eliminated before trial, and plaintiff's current request for equitable relief is precluded and moot.

The court does not have to decide whether Hendrix was entitled to a jury trial to determine the truth of the facts upon which he bases his prayer for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This jury did, of course, find the requisite facts for granting declaratory relief, but this court, without the jury's advice, hereby finds, and will by separate order, declare that what Sterilite did or failed to do vis-a-vis Hendrix was a violation of federal anti-discrimination laws                              .

## **Conclusion**

A separate final judgment will be entered.

DONE this 6th day of August, 2010.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE